**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                      Case No. 07-CR-20

**JASON GOLD**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Jason Gold pleaded guilty to distributing and possessing with intent to distribute crack cocaine, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 27 (base level 32, U.S.S.G. § 2D1.1(c)(4) (2007), minus 2 under the safety valve provision, § 2D1.1(b)(11), and minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at I, producing an imprisonment range of 70-87 months under the advisory sentencing guidelines. Neither side objected to the PSR's calculations, which I found correct and accordingly adopted.

Defendant requested a non-guideline sentence of 60 months, while the government advocated a term within the range. I agreed that defendant's recommended sentence was sufficient to satisfy the purposes of sentencing, and in this memorandum I provide written reasons for the sentence imposed. See 18 U.S.C. § 3553(c).

### I. SENTENCING PROCEDURE

In imposing sentence, the district court must first calculate the advisory guideline range, United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007), then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a), United States v. Harris, 490 F.3d 589,

593 (7th Cir. 2007). The § 3553(a) factors include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed–

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the advisory guideline range;

    (5)    any pertinent policy statements issued by the Sentencing Commission;

    (6)    the need to avoid unwarranted sentence disparities; and

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Section 3553(a) directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In making this determination, the district court may not "'presume' that a sentence within the guidelines range is the correct sentence," United States v. Demaree, 459 F.3d 791, 794 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007); instead, after deriving "whatever insight the guidelines have to offer, [the court] ultimately . . . must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v.

Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

## II.  DISCUSSION

**A.    Nature of Offense**

On three occasions over the course of about one month, defendant sold crack cocaine to a cooperating informant, in fairly significant amounts, 53, 121 and 54 grams, and arranged a fourth deal.  Law enforcement stopped him prior to the final transaction and recovered 83 grams of crack and 55 grams of powder cocaine.  During a search of defendant's residence, officers also found a handgun, but the parties agreed that the gun was not connected to defendant's drug trafficking activities.

It appeared that defendant's motives were financial.  Officers seized and the government forfeited various pieces of expensive jewelry as proceeds of defendant's drug trafficking.

**B.    Character of Defendant**

Defendant was twenty-seven years old, and his prior record was limited to local ordinance violations and a juvenile burglary adjudication.  He qualified for the safety valve based on the absence of violence or weapon possession in connection with the offense, his limited record and his provision of information to the government.  See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

Defendant was married and lived with his wife and their two small children.  She remained supportive, and several other family members appeared in support at sentencing. Defendant had four other children from previous relationships and owed a fair amount of back child support, but he did appear to be involved in their lives.

Defendant dropped out of school, but to his credit later earned a GED and was working

3

towards his HSED. His employment record was quite limited, though. He worked as a barber in 2006, but nowhere else. Defendant reported regular use of marijuana prior to his arrest in this case, but he appeared to have stopped that; all screens on pre-trial release were negative, and he complied with all other conditions of bond. He wife did comment that he drank "a lot."

**C.   Purposes of Sentencing**

The instant offenses were serious given the significant amounts involved. However, I did not really see a significant risk of recidivism or a threat to the public, given defendant's limited record and the fairly limited period of time over which the offenses occurred. The two law enforcement agencies involved in the investigation were owed buy money, which I ordered as a condition of supervised release. Defendant's correctional needs included substance abuse treatment and continuation of his education.

**D.   Consideration of Guidelines**

The guidelines called for a term of 70-87 months. Under all the circumstances, I found that range a bit greater than necessary to satisfy the purposes of sentencing. The range was elevated by the fact that the substance involved in this case was crack rather than powder cocaine. See United States v. Smith, 359 F. Supp. 2d 771, 777-81 (E.D. Wis. 2005) (discussing the guidelines' treatment of 1 gram of crack the same as 100 grams of powder cocaine and the Sentencing Commission's criticisms of that ratio). Although the Sentencing Commission recently reduced the crack guidelines by 2 levels, there remains a substantial gap between the offense levels for crack versus powder. See U.S.S.G. § 2D1.1(c) (2007). In this case, for example, defendant's range would have been 24-30 months he had dealt only in powder cocaine.

The Seventh Circuit forbids district courts from rejecting the ratio contained in the guidelines wholesale, but the court can consider the concerns with that ratio "'insofar as they are refracted through an individual defendant's case.'" United States v. Willis, 479 F. Supp. 2d 927, 933 (E.D. Wis. 2007) (quoting United States v. Jointer, 457 F.3d 682, 687 (7th Cir. 2006)). In the present case, at least some of the aggravating factors that originally motivated the disparity were not present. There was no indication that defendant or anyone with whom he associated engaged in any violence; he did not possess a weapon in connection with the crime; and there were no demonstrably negative effects on the neighboring community, at either of the two locations identified in the PSR, as a result of his conduct. Further, it appeared that defendant was not a street dealer; rather, it appeared that he acted more as a middle man, transporting drugs from his source directly to his customer. Law enforcement did not locate large quantities of drugs in his home or the other property associated with him following his arrest.

Nevertheless, the case did present some factors that could be seen as somewhat aggravating. Defendant did possess a firearm, although the parties agreed the gun was not connected to the crime. Further, defendant dealt in both powder and crack cocaine, and he appeared to appreciate the difference; the two substances were not fungible. He also spoke about ecstacy and marijuana in one of the recorded calls with the informant. Finally, given the expensive jewelry the government seized, it appeared that defendant earned significant amounts from his dealing.[1] Thus, while I considered the effect of the crack/powder disparity in this case, I did not give that factor great weight in determining the amount of time needed

---

[1] As the government noted, defendant also could have used that money to pay his child support arrears rather than buying flashy jewelry.

5

to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

I did conclude that the guideline range was a bit greater than necessary to protect the public, given defendant's lack of prior record and the limited period of time it appeared that he was dealing. He also had some positive character traits as reflected in the statements from his wife, and the strong support of his family would assist in his successful re-integration into the community upon completion of his sentence. According to his allocution, defendant had definite plans for the future. See 18 U.S.C. § 3553(a)(2)(C).

Finally, I found the range a bit greater than necessary to deter defendant from re-offending. He had never spent any time in jail before, so a prison sentence of any length would send him a strong message. See 18 U.S.C. § 3553(a)(2)(B). General deterrence appears to play a limited role in drug cases of this sort. See United States Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004) ("Incapacitating a low-level drug seller prevents little, if any, drug selling; the crime is simply committed by someone else.").

### III. CONCLUSION

Balancing all of these factors, I found a sentence of 60 months sufficient but not greater than necessary. This sentence provided adequate punishment, deterrence and protection of the public, while acknowledging the mitigating circumstances discussed above. Because the sentence was based on the particular facts of the case and supported by the Commission's reports, and in any event did not vary much from the guidelines, it did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

Therefore, I committed defendant to the custody of the Bureau of Prisons for 60 months on each count to run concurrently. I recommended that he be placed at an institution as close to his home as possible to ensure continued family contact and participate in any alcohol and

6

drug abuse treatment programs available, as well as any HSED classes. Upon release, I ordered him to serve three years of supervised release, with a drug aftercare and appropriate financial conditions, including re-payment of the "buy" money expended in the case.

Dated at Milwaukee, Wisconsin, this 16th day of November, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge